J. A. POLLARD, Executor, v. ELIAS POLLARD and others.

*Construction of Will.*

A testator, after devising to his wife a life-estate in the lot on which his dwelling stood, and providing for her a life annuity, to be raised by the

rents of another tract, devised to his daughter, son and grandson, a third tract, "equally, to be by them held in common" during the life of his wife. The will further directed that after the wife's death the executor should sell the last mentioned tract "and also the piece directed to be leased and let" for the benefit of said wife, and that the proceeds therefrom should be equally divided between such children and grand-child and their children, " the children to take the share of the parent who may die before my (the testator's) death." In the concluding clause of the will, the one acre dwelling lot was directed to be sold after the death of the wife and the proceeds distributed in the same manner as the proceeds of the realty ;

*Held*, that the children and grand-children took vested estates in the land and its proceeds, each one-third, and that the children of either who might die before the testator succeeded to the share of their deceased parent.

(*Coakley* v. *Daniel*, 4 Jones Eq., 89; *Moore* v. *Leach*, 5 Jones, 88, cited and approved.)

CIVIL ACTION tried at Spring Term, 1880, of PITT Superior Court, before *Avery, J.*

This action was brought by the plaintiff as executor of Benjamin Pollard to obtain a construction of the last will and testament of his testator. The facts are set out in the opinion. The plaintiff appealed from the ruling of the court below.

*Messrs. J. B. Yellowley* and *J. B. Batchelor*, for plaintiff.
*Messrs. Latham & Skinner*, for defendants.

SMITH, C. J. Benjamin Pollard died in 1877, leaving a will in which he devises the one acre lot on which his dwelling stands to his wife for life, and bequeathes to her an annuity of $150 while she lives, to be raised from the renting of a certain tract of land, and also devises another tract lying on the south side of the road to his daughter Henrietta Coggins, his son Elias Pollard, and his grandson Joseph A. Lewis, "equally to be held by them in common during the

life of his wife Phebe," and then proceeds: " After her death I direct that my executor sell said piece of land, and also the piece herein directed to be leased and let for the benefit of said wife, and the proceeds arising therefrom to be equally divided between my daughter Henrietta, my son Elias, and my grandson Joseph A. Lewis, and their children, the children to take the share of the parent who may die before my death."

In the concluding clause of his will he says: " I devise the one acre in the same manner that I have the balance of the house tract, or piece that is to be rented, and direct my executor after the death of my wife to sell the said one acre that I have given to my wife for her life-time, and distribute the proceeds in the same manner, to be sold as part and with the said piece that I have directed to be rented out."

The wife died and the executor has sold the lands described, the proceeds being in his hands, he asks the advice of the court as to the distribution thereof under the will.

The son Elias and the grandson Jos. A. Lewis, are still living, and the daughter, who was living at the testator's death, has since died, and the said Elias has become her administrator. The other defendants are the children of the three legatees named, and the administrator of a deceased child of said Henrietta, who are asserting their respective claims to share in the fund held by the plaintiff, under different interpretations of the will. Three possible constructions are suggested:

1. That the shares go to the legatees mentioned for life and at the death of either, his or her share in remainder to his or her children including representatives of deceased children as aforesaid.

2. The fund is to be distributed *per capita* among the three named legatees and their children, including among the latter such as were living at the death of the widow, and

the representatives of such as were living at the testator's death and died before the life tenant.

3. That the children and grandson take vested estates each one-third, and the children of either who may die before the testator succeed to the share of their deceased parent.

The first construction is inadmissible because it is in conflict with the language employed, or else excludes altogether the concluding clause of the bequest. No succession of estates or interests is indicated in the money fund, into which the land is converted, and which character it bears, in contemplation of the conversion, in the will itself. The bequest is to the children of the share of their parent who may die before the testator himself. They do not succeed at the death of the testator, whenever that event may occur, but only in case their parent dies in his life-time

The cases called to our attention in support of a construction by which the parent and his children take in succession are all decided upon the force of the context and a general purpose declared which would most effectually be carried out by so dividing the estates. In many of them the husband was excluded from his wife's share and yet she was obviously the primary object of the testator's bounty, and the testator's aim was accomplished by giving her a full life estate, and a remainder to her children. Thus BATTLE, J., in *Coakley* v. *Daniel*, 4 Jones Eq., 89, where the bequest "to my sisters and their children" was followed by the words, "that no property of which I am now possessed or may hereafter fall heir to, shall go to any but my sisters and their progeny, and not their husbands," says: "Most of the children were unmarried and without children, and in case of the unmarried sisters the intention of the testator in favor of any children they might have, could only be carried out by giving the sisters estates for life, with remainder to their children respectively."

There are no qualifications annexed to the bequest to vary the import of the words used by the testator, and no indication of a different intent elsewhere expressed, and hence the authorities relied on do not support the construction of successive divided interests.

2. The second interpretation which gives equal undivided parts to the legatees named and their children, in the absence of the expression, " the children to take the share of the parent who may die before my death," is sustained by the decision in *Moore* v. *Leach*, 5 Jones, 88. There the legacy is to my beloved daughter, Eliza Ann Leach, (wife of J. Q. A. Leach,) and her children, the lawful heirs of her body," and the devise, " my house and lots in the town of Pittsboro, wherein the said Leach now lives, together with, &c., to her, the said Eliza Ann Leach, and her children forever." BATTLE, J., referring to the rule at common law whereby a devise of land to one and his children or issue, and there is then issue, vests a joint estate in all for life, adds : " The same rule applies to bequests of personalty to a mother and her children, and if there be children living at the death of the testator, she and her children will take equally, unless there be something peculiar in the will indicative of an intention on the part of the testator that she should take for her life, with a remainder to her children."

3. But there are here superadded words qualifying and explanatory, by which we must understand the testator to say, that by using the words " their children " he means that they shall take and take only upon the contingency of their parent's death before that of the testator himself, and in order to prevent a supposed lapse. While it is true no lapse would take place if issue were living by force of the statute, it is not less apparent that the testator, without perhaps being aware of the change in the law, intended to guard against such an apprehended result of the death of any of them. This construction satisfies all the require-

ments of the will, without violence to any of its provisions, and must be considered as the correct one. But we find further corroboration of the intent in other parts of the instrument. The three named, son, daughter and grandson, are evidently the primary and principal objects of the testator's bounty. In a preceding clause, he gives his land lying on the south side of the road, and the sale of which produces part of the fund in dispute, to my daughter Henrietta Coggins, to my son Elias E. Pollard and to my grandson Joseph A. Lewis, equally to be held by them as tenants in common during the life of my wife Phebe, without mention of their children at all. And in a later clause he gives the residue of his estate to " my daughter Henrietta, my son Elias and my grandson Joseph A. Lewis and their children equally, the children to take the share of the parent who may die before my death."

Again, he devises the Teil land to his " daughter Henrietta and her children born in wedlock, the children to take if she dies before my death." The careful and studied use of the same expression, in connection with the mention of children, manifests a distinct purpose to confine the gift to them, when and in the event only that the testator survive the parent, and it would alike violate the testator's intent to leave out altogether these operative words or any portion of them.

The three legatees named had each children living at the testator's death, and two of them had children living at the time of making her will. The death of the daughter since transmits her share to her administrator. It must therefore be declared that the legatees, Elias, Joseph A. Lewis and the said Elias administrator of the legatee Elizabeth, are entitled each to one third part of the fund in the hands of the plaintiff, his executor. There is no error.

· No error. Affirmed.